UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-450-FDW
(3:15-cr-303-FDW-DCK-1)

| | |
|---|---|
| JOHNATHAN OLANDUS HALL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. (Doc. No. 1).

I. BACKGROUND

Petitioner was charged with one count of possession of a firearm by a convicted felon in the underlying criminal case. (3:15-cr-303, Doc. No. 1). He entered an open guilty plea that was supported by a written factual basis. He admitted that:

> On August 7, 2015, local law enforcement was patrolling the area of Summit Avenue due to crowds letting out al Club 935. This area is known for fights involving guns. Officer Sheffield drove towards the parking lot to provide a police presence. While there, Officer Sheffield heard 5-7 gunshots and noticed people running from Summit Avenue. Officer Sheffield exited his vehicle and then heard another 2-4 gunshots. As that happened, Officer Sheffield saw the muzzle flash from the rounds. He followed the muzzle flash to a black handgun in Hall's hand. Officer Sheffield ordered Hall to drop his weapon and get on the ground. Hall ran and retained the weapon. Officer Sheffield engaged in a foot chase after Hall. Hall ultimately threw his weapon after the club security officers drew their weapons on him from other directions. After Hall threw his weapon, he continued to run. However, Officer Sheffield caught up with Hall and attempted to detain him. A struggle ensued requiring officer Sheffield to exert the use of force, hitting Hall in the face twice. During the struggle, Hall attempted to hit and head-butt Officer Sheffield. Security officers from the club arrived and assisted Officer Sheffield in detaining Hall. Subsequently, it was discovered that victim B.S. had been shot in the stomach. B.S. was immediately taken to the hospital's operating room where he

1

was initially admitted into ICU and released a few weeks later after multiple surgeries.

Officers recovered a black Glock, Model 23, .40 caliber pistol from the scene. The firearm was not manufactured in North Carolina.

Prior to August 7, 2015, Hall had been convicted of a crime punishable by a term of imprisonment exceeding one year, specifically, Armed Robbery Conspiracy and Breaking and Entering. At the time of the incident, Hall was being supervised by the North Carolina Department of Public Safety for his release from prison on July 17, 2015.

(3:15-cr-303, Doc. No. 18 at 1-2).

The plea hearing came before Magistrate Judge David S. Cayer on June 17, 2016. (3:15-cr-303, Doc. No. 51). Petitioner stated, under oath, that he wanted to plead guilty after consulting with his attorney. (3:15-cr-303, Doc. No. 51 at 2). He had received a copy of the indictment and discussed it with counsel. (3:15-cr-303, Doc. No. 51 at 3). The Government summarized the charges and potential penalty as follows:

> THE COURT: Would the Government summarize the charge and the penalty.
>
> MR. GUINN: Yes, sir, Your Honor. It is a felon in possession of a firearm. The maximum penalty is 10 years of imprisonment, $250,000 fine, Your Honor, followed by a period of supervised release.
>
> THE COURT: Do you fully understand the charge against you, including the maximum penalty you face if convicted?
>
> THE DEFENDANT: Yes.

(3:15-cr-303, Doc. No. 51 at 3).

Petitioner stated the he understood the consequences of plea and how the sentencing guidelines might apply to the case. (3:15-cr-303, Doc. No. 51 at 4). He acknowledged that the Court would not be able to determine the range until after the PSR has been prepared and Petitioner has had an opportunity to comment on it, and that the sentence may be either higher or lower than that called for by the guidelines. (3:15-cr-303, Doc. No. 51 at 4). Further, he acknowledged that

receiving a sentence more severe than he expected would not permit him to withdraw his plea. (3:15-cr-303, Doc. No. 51 at 4-5). He admitted that he is in fact guilty of the count to which he is pleading guilty. (3:15-cr-303, Doc. No. 51 at 6). There was no written plea agreement or terms and conditions that needed to be put on the record. (3:15-cr-303, Doc. No. 51 at 6). Petitioner stated that he read the factual basis, understands it, and agrees with it. He further stated that his plea was voluntary and that he was satisfied with his lawyer:

> THE COURT: Has anyone threatened, intimidated, or forced you to enter a guilty plea today?
>
> THE DEFENDANT: No.
>
> THE COURT: Has anyone made you any promises of leniency or a light sentence to induce you to plead guilty?
>
> THE DEFENDANT: No.
>
> …
>
> THE COURT: Are you satisfied with the services of your attorney in this case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Is there anything that you would like to say at this time about the services of your attorney?
>
> THE DEFENDANT: No.

(3:15-cr-303, Doc. No. 51 at 6-7).

The Presentence Investigation Report ("PSR") scored Petitioner's base offense level as 14 and added four levels for possessing and using the firearm in connection with another felony offense, assault with a deadly weapon with intent to kill inflicting serious injury. (3:15-cr-303, Doc. No. 27 at ¶ 14, 15). The cross-reference in U.S. Sentencing Guidelines § 2K2.1(c)(1)(A) and 2X1.1 provides a base offense level of 29. (3:15-cr-303, Doc. No. 27 at § 16). Three levels were

deducted for acceptance of responsibility resulting in a total offense level of 26. (3:15-cr-303, Doc. No. 27 at ¶¶ 22-24).

The PSR's criminal history section scored two juvenile offenses for larceny/possession of stolen goods that Petitioner committed at age 14, and injury to real property/disorderly conduct/communicating threats that Petitioner committed at age 15. (3:15-cr-303, Doc. No. 27, ¶¶ 29, 32). The PSR also scored six points for adult convictions. (3:15-cr-303, Doc. No. 27 at ¶ 36). Two levels were added because Petitioner committed the instant offense while under a criminal justice sentence, resulting in a total criminal history score of 10 and a criminal history category of V. (3:15-cr-303, Doc. No. 27 at 36-38). The resulting guidelines range was for 110 to 120 months' imprisonment. (3:15-cr-303, Doc. No. 27 at ¶ 79).

At the sentencing hearing, counsel argued that Petitioner should be granted a sentencing variance based on his history of mental health issues and overrepresentation of his criminal history due to the scoring of two juvenile offenses from when Petitioner was 14 and 15 years old. Counsel argued as follows with regards to the criminal history issue:

> MS. GEBRE-EGZIABHER: Your Honor, we are asking for a variance with respect to the overrepresentation of Mr. Hall's criminal history from being ten points to eight points for the two juvenile convictions he had when he was 14 and 15. Both of those sentences had resulted in probationary sentences. So we're asking the Court to take that into account…. So for that reason, we're asking the Court to consider putting him at a criminal history category IV instead of V….

(3:15-cr-303, Doc. No. 50 at 5)

The Government argued that the juvenile priors were correctly scored, that the criminal history score did not overrepresent Petitioner's criminal history and that he is a dangerous person. (3:15-cr-303, Doc. No. 50 at 18).

4

The Court found that the defense had failed to meet the standard set forth in U.S. Sentencing Guidelines § 4A1.3(b), that Petitioner's criminal history was not overstated, and that no variance was warranted. (3:15-cr-303, Doc. No. 50 at 19-20, 38-39).

The Court sentenced Petitioner to 110 months' imprisonment followed by three years of supervised release. (3:15-cr-303, Doc. No. 50 at 45-46); (3:15-cr-303 at 42).

Petitioner challenged the reasonableness of his sentence on direct appeal, specifically, that the Court procedurally erred by failing to address his argument that he was not the shooter. The Fourth Circuit Court of Appeals affirmed on August 3, 2017. It found that, even though the Court did not explicitly address his argument that he was not the shooter, the context of the sentencing hearings revealed that the Court had considered and rejected that argument. United States v. Hall, 702 Fed. Appx. 157, 158 (4th Cir. 2017). No certiorari petition was filed.

The instant § 2255 Motion to Vacate was docketed on August 16, 2018.[1] Petitioner argues that: (1) two criminal history points for juvenile offenses were improperly counted, which raised his criminal history level from IV to V; and (2) counsel was ineffective for telling Petitioner that he would get less time than he received and failed to go about sentencing the way they had planned, and "practically coerced" him into pleading guilty. (Doc. No. 1 at 5).

---

[1] Petitioner did not date his § 2255 Motion to Vacate. Petitioner apparently believed that his § 2255 petition was untimely filed and explained in a letter that he missed the deadline because he was on lockdown. (Doc. No. 1-1). However, the § 2255 petition was timely filed within a year after his criminal judgment became final. See Gonzalez v. Thaler, 565 U.S. 134, 149 (2012) (a federal judgment becomes final for purposes of 28 U.S.C. § 2255(f)(1) when the U.S. Supreme Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari or, if a petitioner does not seek certiorari, when the time for filing a certiorari petition expires).

## II. STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under .

. . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. Strickland, 466 U.S. at 697.

The Sixth Amendment right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

**(1) <u>Sentencing Calculation</u>**

First, Petitioner contends that he was improperly scored two points for juvenile convictions that raised his criminal history category from IV to V, and resulted in a higher sentence than he should have received.

As a preliminary matter this sentencing claim is procedurally defaulted from § 2255 review because Petitioner failed to raise this claim on direct appeal.[2] It also fails on the merits.

Section 4A1.1(c) of the U.S. Sentencing Guidelines provides that: (a) three points are added for each prior sentence of imprisonment exceeding one year and one month; (b) two points are added for each prior sentence of imprisonment of at least 60 days; and (c) one point for each sentence not counted in (a) or (b), up to a total of four points. U.S.S.G. 4A1.1(a)-(c). Offenses committed before the age of 18 are scored with one point "for each adult or juvenile sentence imposed within five years of the defendant's commencement of the instant offense…." U.S.S.G. § 4A1.2(d)(2)(B); <u>see also</u> U.S.S.G. § 4A1.1, application note 3.

Petitioner committed the instant offense on August 7, 2015, and he was sentenced for the two juvenile offenses at issue on May 27, 2011, and December 12, 2011. (3:15-cr-303, Doc. No. 27 at ¶¶ 29, 32). Because the two juvenile cases were sentences less than five years before Petitioner committed the offense in the instant criminal case, they were each properly scored with one criminal history point. No sentencing error occurred.

---

[2] The Court would ordinarily give Petitioner notice and the opportunity to be heard on the procedural default of this claim. See generally <u>Yeatts v. Angelone</u>, 166 F.3d 255 (4th Cir. 1999). It has not done so in the instant case, however, because this claim also fails on the merits.

**(2)     Involuntary Plea**

Petitioner argues that counsel was ineffective for telling him that he would get less time than he received, deceived and practically coerced him to plead guilty, and failed to go about sentencing the way they had planned which resulted in the time he received.

Petitioner's claims that counsel coerced him to plead guilty, deceived him, and told him he would receive a lower sentence than the one the Court actually imposed, are conclusively refuted by the record. Petitioner stated under oath in open court that nobody had threatened, intimidated, or forced him to plead guilty, or made any promises of leniency or a light sentence to induce him to plead guilty, and that he was satisfied with counsel's services. (3:15-cr-303, Doc. No. 51 at 6-7). His present conclusory and unsupported claims to the contrary are rejected. Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005) (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary).

Petitioner's claim that counsel "did not go about [his] sentencing the way [they] discussed," (Doc. No. 1 at 5), is too vague and conclusory to support relief. United States v. Dyess, 730 F.3d 354 (4th Cir. 2013) (vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court).

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Petitioner's § 2255 Motion to Vacate.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: September 5, 2018

Frank D. Whitney
Chief United States District Judge